UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
GREENVILLE DIVISION

---

Bobby Lloyd Coates,

          Plaintiff,

          against

Oakworth Capital Bank,

          Defendant.

Docket No.: _____

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

Bobby Lloyd Coates, by and through his attorneys, Greg Baker and Terry Kilgore, for his Complaint against Oakworth Capital Bank, alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff seeks a Declaratory Judgement, pursuant to 28 U.S.C. § 2201. Specifically, the Plaintiff is seeking immediate access to their accounts at Oakworth Capital Bank.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Florida and Alabama, and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

## VENUE

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4. Bobby Lloyd Coates is an individual who resides in Tampa, Florida. Bobby Lloyd Coates is a citizen of Florida. Bobby Lloyd Coates is a member of Matrix Health Network, a Tennessee limited liability company ("Matrix") which is member-managed, and President and CEO of Matrix.

5. Upon information and belief, Oakworth Capital Bank is a corporation that is incorporated in Alabama and has its principal place of business in Birmingham, Alabama.

Oakworth Capital Bank is a financial institution with locations in Alabama, Tennessee, and North Carolina.

## FACTS

### Loan Agreement

1. Mr. Coates is a founding member of Matrix.

2. Matrix is member-managed.

3. Mr. Coates is the President and Chief Executive Officer ("CEO") of Matrix.

4. Mr. Coates is the registered agent of Matrix.

5. On January 27, 2023, Matrix, Navis Clinical Laboratories, a Tennessee corporation ("Navis"), certain enumerated subsidiaries of Navis, and Oakworth Capital Bank ("Oakworth") executed a Loan and Security Agreement ("Loan Agreement"), in which Navis and Matrix is jointly identified as the Borrower and Oakworth is identified the Lender ("Lender").

6. Also executed on the same day, with the Loan Agreement, were a Revolving Loan Promissory Note ("Revolving Loan Note") and a Term Loan Promissory Note ("Term Loan Note") (collectively, the "Notes").

7. A guaranty for Matrix was executed on the same day as part of the Loan Agreement.

8. Matrix also granted a security interest as part of the Loan Agreement.

9. A UCC-1 Financing Statement was filed, as part of the Loan Agreement, for Mr. Coates and for Matrix.

10. The Revolving Loan Note was for a maximum principal amount of one million dollars ($1,000,000) and the Term Loan Note was for a maximum principal amount of thirteen million, nine-hundred and fifty-thousand dollars ($13,950,000).

11. Mr. Coates signed the Loan Agreement and Notes as President and CEO of Matrix.

12. Mr. Coates is a personal guarantor of the Notes.

13. The Loan Agreement provides in Article 2.2 (a) that "[u]pon the Borrower's request in writing, Lender [Oakworth] ***will*** make advances of the Loans subject to the terms and conditions of the Agreement and the Notes." [emphasis added]

14. The Loan Agreement states that "Borrower shall designate, in writing, named individuals who are authorized by Borrower to request advances hereunder, and Lender shall be entitled to rely upon such authorizations until revoked in writing by Borrower."

15. Article 2.2 (c) of the Loan Agreement states that "Borrower may present checks and request wire transfers (together, the "Drawings") to be drawn from the Disbursement Account, and to the extent that the balances there are less than the aggregate amount of such Drawings, Lender ***shall*** advance the Loans in the Disbursement Account in amounts sufficient to cover such Drawings so long as there is availability therefor under the [loan]." [emphasis added]

16. The Revolving Loan Note states that it "establishes a revolving line of credit during the term of this Note to be used by Borrower in accordance with the terms and provisions of the [Loan Agreement]."

17. The Revolving Loan Note provides that the Borrower may request advances, provided that "(a) neither an Event of Default nor any event or circumstance that, with notice or lapse of time or both, would constitute an Event of Default, is in effect at the time of Borrower is otherwise entitled to obtain the Advance or would be in effect if such Advance were made; (b) Borrower is in compliance with all agreements, warranties, covenants and conditions contained in this Note, the Loan Agreement, and all other Loan Documents and all such warranties, covenants and representations of Borrower are accurate; (c) the resulting aggregate amount of all Advances hereunder do not exceed the face of the amount of this Note; and (d) Borrower is otherwise entitled to obtain the Advance under this Note, the Loan Agreement and the Loan Documents."

18. The Loan Agreement lists fourteen (14) different events that may result in an event of default ("Event of Default") under Article 8.1.

19. The Loan Agreement states in Article 8.1 that "[u]pon the occurrence of any one or more of the events, without the Lender's prior written consent, Borrower shall be in default under this Agreement and Lender may, at its option, declare default, accelerate the principal and interest on any notice or notes of Borrower and all Indebtedness of Borrower remaining unpaid to be immediately due and payable, all without demand, presentment, or other notice of any kind".

20. However, Article 8.1 states that the events listed "shall not constitute an Event of Default unless (i) with regard to any monetary default or failure to pay any amount of money when due, such event, default, or failure continues for a period of five (5) days after written notice to Borrower, and (ii) with regard to the performance of any other provision [listed] for which no time limit is specified, such event continues for a period of thirty (30) days after written notice to Borrower."

21. Upon the occurrence of any Event of Default, the Loan Agreement states in Article 8.2 that "(a) all indebtedness shall at Lender's option and without notice be immediately due and payable without present, demand, protest or notice of dishonor, all of which are hereby expressly waived by Borrower, (b) the obligation, if any, of Lender to extend any further credit under any of the Loan Documents shall immediately cease and terminate; and (c) Lender shall have all rights, powers and remedies available under each of the Loan Documents, or accorded by law, including without limitation to (i) the right to resort to any or all security for any credit subject here to . . . (ii) the right to appoint a receiver . . . to take possession of all or any portion of Collateral and/or business operations of Borrower and to exercise such power as the court shall confer upon the receiver."

### Oakworth Not Providing Mr. Coates Account Access

22. Since at least August 2023, Oakworth has denied Mr. Coates access to (1) the line of credit, and (2) account information to the Notes associated with the Loan Agreement.

23. On July 26, 2023, Mr. Coates exchanged emails with an agent of Oakworth, Mr. Terrell Taylor Jr. ("Mr. Taylor").

3

24. Prior to the Loan Agreement, and since the execution of the Loan Agreement, Mr. Coates has spoken numerous times with Mr. Taylor in person and via email regarding the Notes.

25. On July 26, Mr. Coates asked Mr. Taylor for detailed payment history and statements for the Notes, as well as monthly updates.

26. Two days later, on July 28, Mr. Taylor informed Mr. Coates via email that he "got authorization" to share that Navis had made all payments on the loan.

27. In a follow-up email, Mr. Coates requested written confirmation of the account status.

28. On August 4, Mr. Taylor emailed Mr. Coates screen shots of the account information, and stated that he had "received approval" to do so.

29. On August 23, 2023, Mr. Coates emailed Mr. Taylor asking how to access the line of credit from the Loan Agreement to use for Matrix.

30. Upon information and belief, there was no response from Mr. Taylor to Mr. Coates' request to access the line of credit.

31. On August 23, 2023, Mr. Coates emailed Mr. Taylor asking him to give access to Andy Grengs ("Mr. Grengs"), the Matrix Chief Financial Officer ("CFO"), to the line of credit for the loan.

32. Upon information and belief, there was no response from Mr. Taylor to Mr. Coates' request to give Mr. Grengs access to the line of credit.

33. August 28, 2023, Mr. Coates emailed Mr. Glenn Shorey ("Mr. Shorey") at Oakworth and Mr. Taylor asking if they had received any notice of asset sale by Navis or Matrix.

34. Upon information and belief, there was no response from Mr. Shorey or Mr. Taylor regarding any notice of sale of assets by Matrix or Navis.

35. On September 7, 2023, Mr. Coates sent via email and certified mail a letter to Mr. Taylor at Oakworth demanding access to the loan accounts.

36. Upon information and belief, there has been no response from any representative of Oakworth to Mr. Coates or his attorneys.

37. To date, Mr. Coates has not been provided access to the accounts associated with the Loan Agreement, despite numerous attempts.

38. Further, Mr. Coates has not been provided any notice of and is not aware of any event that would have constituted an event of default pursuant to the Loan Agreement and Notes.

39. Upon information and belief, there has been no acceleration on the Loan, nor any resort to security by Oakworth that would be associated with an Event of Default.

# COUNT 1

## As against Oakworth Capital Bank

40. Bobby Lloyd Coates repeats and realleges paragraphs 1 through 39 hereof, as if fully set forth herein.

4

41. Under the Loan Agreement, Matrix is the Borrower. The Loan Agreement provides that the Lender, Oakworth, will make advances on the Loans if the Borrower submits a request in writing. Mr. Coates has made requests to access the account via email and letter, but there have been no transfers since at least August 2023.

42. Under the Loan Agreement, the Lender, Oakworth, shall advance Loans in amounts upon the Borrower's request so long as there are sufficient amounts to cover the request. Oakworth has denied Mr. Coates access to the account to verify if there are sufficient funds to cover any request.

43. Under the Loan Agreement, in the Event of Default, Oakworth's obligation to extend any further credit is terminated. Upon information and belief, there has been no events that would give rise to an Event of Default. Upon information and belief, there have been no indicators that there has been an Event of Default, such as an acceleration on the Loan nor attempt to resort to any security for any credit.

44. By reason of the foregoing, Plaintiff seeks Declaratory Judgement allowing Matrix and Mr. Coates access to the line of credit and account information on the loans relating to the Loan Agreement with Oakworth, plus interest, attorneys' fees and costs.

WHEREFORE, Bobby Lloyd Coates requests judgment as follows:

A. On Count 1, awarding Plaintiff Declaratory Judgement allowing Matrix and Mr. Coates access to the line of credit and account information on the loans relating to the Loan Agreement with Oakworth, plus interest, attorneys' fees and costs.

B. Granting Bobby Lloyd Coates such other and further relief as the Court deems just and proper.

Respectfully Submitted,
R. WAYNE CULBERTSON, PC

BY: **/S/ JOSEPH W. MCMURRAY**
Attorney for Bobby Lloyd Coates
119 W. Market Street
Kingsport, TN 37660
(423) 247-6161
mcmurraylaw@gmail.com

## VERIFICATION

STATE OF FLORIDA            )
                            ) ss.:
COUNTY OF TAMPA             )

Bobby Lloyd Coates, being duly sworn, deposes and says that I am the Plaintiff in the case captioned *Bobby Lloyd Coates, against Oakworth Capital Bank,* in the United States District Court for the Eastern District of Tennessee and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on except as to those matters that and things stated upon information and belief, and as to those matters, I believe them to be true.

*Bobby Lloyd Coates*
BOBBY LLYOD COATES

State Florida  County Okaloosa

Sworn to me this __02__ day of October 2023
Bobby Lloyd Coates provided US passport for ID

*Ozella Mae Moore*
Notary Public
OZELLA MAE MOORE   Online Notary

Notarized online using audio-video communication

OZELLA MAE MOORE
Notary Public - State of Florida
Commission # HH 391605
Expires on June 13, 2027